question on the trial of the cause. Both title and license were set p, and each is within the clear intent of the statute.

Judgment reversed and a new trial ordered.

- - - - - ▸ ◆ ◂ - - - - -

## GROVIER vs. HALL.

An administrator who fails to inventory property, knowing the same to belong to the estate of the decedent, but treats the same as the property of decedent's widow, the Probate Judge approving and allowing alleged equitable claims in her favor, equal in amount to the value of such property, and allowing the final account of the administrator and ordering and discharging him from liability on his bond, *Held*, That the administrator could not be heard to say against heirs and next of kin on final accounting, that a decision of this sort was unimpeachable. If he had possession of funds which he knew belonged to the estate or which he had reason to believe so belonged, his omission to place them on the inventory will not excuse him from accounting for them.

agreement of jury—Decision by Court on the evidence produced before Jury, irregular .

Error to Macomb Circuit.

*Opinion by* GRAVES, J.—This was an appeal by the plaintiff in error, as one of the next of kin and heirs at law of decedent, from an order of the Judge of Probate, of June 9, 1865, allowing the final account of Hall as administrator, and discharging him from liability upon his bond to the estate. The parties agreed upon issues which confined the accounting to certain bank stock which stood in the name of decedent, to moneys received by Hall from the widow of decedent and to a claim of interest.

These items were not put upon the inventory, and it was claimed by plaintiff in error that these moneys and the proceeds of the bank stock, together with some interest, were assets of the estate, and were chargeable against Hall in his account. The respondent claimed that these effects were all treated as the property of the widow; that the Judge of Probate had allowed $24,000 of claims against the estate, which were in equity the property of the widow; and that the supposed assets in question were regarded as her own under the circumstances. No commissioners were appointed to pass upon claims; so far as can be gathered from the record, and the

Judge of Probate performed the duties of commissioners, and made the allowance now said to be in favor of the widow.

On the trial, evidence was given to show that the widow and administrator were brother and sister; that after her husband's death the widow delivered to her brother some $1,400, of which $1,000 was taken from the private trunk of decedent; $200 received from a debtor, and the residue was derived from a sale of bank stock. Also, that the administrator knew whence these [securities came, and that, on their receipt, he gave to the widow securities running to her individually, and which are still unpaid.

Respondent gave evidence tending to show that in June, 1851, the Probate Judge allowed claims against the estate in favor of several parties, for the benefit of the widow to the amount of about $200; that the widow had treated the moneys as her own, and had lent them to respondent on securities running to herself; that plaintiff in error knew of such dealing, and of the source from which the funds were derived, and as agent of the widow, had collected interest on the securities given to her. To rebut this, plaintiff in error offered to prove that he had not collected anything on said securities since coming of age, and that the claims allowed against the estate were purchased with the proceeds of the estate by the administrator, and assigned to the widow without his knowledge or consent.

This evidence was excluded on objection by defendant in error, that the award of the Probate Judge could not be impeached. *Held*, That the administrator could not be heard to say against heirs and next of kin on final accounting, that a decision of this sort was unimpeachable. If he had possession of funds which he knew belonged to the estate, or which he had reason to believe so belonged, his omission to place them on the inventory will not excuse him from accounting for them and he cannot defend himself on the ground that he had regarded them or treated them as lent.

The jury were sent out below to find a verdict. While they were gone defendant in error moved the Court to decide the case without a jury, on the ground that the issues were by law properly triable by the Court alone. The jury disagreed and

the Court refused the motion. Afterwards, and upon the evidence before the jury, the Court affirmed the order of the Judge of Probate. The parties consented that the evidence need not be retaken. *Held*, That the Court should have empanneled a new jury, the case involving issues of fact, as well as of law.

The order of the Circuit Court affirming that of the Probate Judge, was reversed with costs and a new trial ordered.

---

## THE PEOPLE vs. JOHR.

The Court will take judicial notice as to who is Deputy Auditor General ; and his endorsement on a County Treasurer's bond of the words, " Official bond of H. Johr, County Treasurer of St. Clair County, to the Auditor General, 1865 and 1866. $20,000. Recorded and filed May 30, 1865. S. D. Bingham, Deputy Auditor General," will be held as an acceptance and approval by the Auditor General.

A County Treasurer neglected to have his bond approved by certain officers indicated by statute. On a suit on the bond, in behalf of the People, to recover the proceeds of sales for delinquent taxes, *Held*, That the Treasurer, who on the faith of the bond was allowed to make the sales and secure the money, and his sureties, could not afterwards be heard to make the objection that the bond executed by them and accepted by the Auditor General, was not approved by the officers required by statute. The additional precautions provided were intended solely for the benefit of the State, not at all for the benefit of the defendant or his sureties.

Error to St. Clair Circuit.

*Opinion by* CHRISTIANCY, J.—This was an action of debt brought in the name of the people against Johr and his sureties, on a bond given by Johr, as County Treasurer of St. Clair County, to the Auditor General, conditioned for accounting for all moneys paid to him for sales of lands for taxes at the annual tax sales in said county. The declaration alleges the non-payment of $7,490 88 received for the sales of 1866. It was admitted that he had that amount in his possession November 2, 1866.

The bond appears to have been approved by one Circuit Court Commissioner of said county, and this approval only was alleged in the declaration. There was no approval by the Prosecuting Attorney or other commissioner, nor was there any ex-