## Richmond

JAMES E. SPICELY, ET AL. v. WILLIAM S. JONES.

January 20, 1958.

Record No. 4723.

Present, All the Justices.

The opinion states the case.

*W. M. Gravatt, Jr.,* for the appellants.

*Richard E. Lewis (Morton G. Goode; Kossen Gregory; Woodrum & Gregory,* on brief), for the appellee.

SPRATLEY, J., delivered the opinion of the court.

Estelle Jones Coleman, also known as Estelle Jones, died February 19, 1952, leaving a small estate, including some land located in Dinwiddie County, Virginia. The decedent, born Estelle Spicely, first married Carey Jones, and upon the death of Jones, married John Coleman. After the death of Coleman, she resumed the name of

Estelle Jones in all her personal and business affairs. No children were born of either marriage.

On December 21, 1953, a paper writing purporting to be the true last will and testament of Estelle Jones, deceased, was offered for probate in the Clerk's Office of the Circuit Court of Dinwiddie County.

The instrument, written on two pages, was in form and language as follows:

"Feb 1st 1952 this
is my last will
I give my son
William S. Jones
the 10 acres on the
other side of the road
to Inez I Spiceley's
& Cragg's children den
to never to be sold —
go from heir to
heir to heir . Thomas
~~Jomas~~ ~~Jono~~ Jones
my adoptted grand
son $5.00 and all
the Rest to William
Jones as long as
 he
as ∧I live neverer
to be sold as long
  (separate page)
as any heirs contains
family cememetary
William see after
me as ~~onou~~
long as I live

Estelle Jones."

Upon proof that the writing and signature were wholly in the handwriting of Estelle Jones, it was admitted to probate, and recorded as the true last will of Estelle Jones, in the following language and form:

"Feb. 1st 1952 This is my last will I give my son William S. Jones the 10 acres on the other side of the road to Inez I. Spicely's &

Craggs children to never to be sold go from heir to heir to heir. Thomas Jones my adopted grandson $5.00 and all the rest to William Jones as long as as he live never to be sold as long as any heirs contains family cemetary William see after me as long as I live.

Estelle Jones."

In January, 1954, William S. Jones instituted this proceeding by filing a bill of complaint in the Circuit Court of Dinwiddie County against James E. Spicely, a brother of the testatrix, and the other heirs at law of Estelle Jones, praying for the construction of the above instrument. Code, § 64-84. James E. Spicely filed an answer and cross-bill contesting the probate of the will and its validity. He prayed, however, that if held to be a valid will that its provisions be construed by the court.

On February 11, 1954, James E. Spicely appealed to the Circuit Court from the order admitting the will to probate. Code, § 64-74. On April 9, 1954, the appeal was dismissed by the Circuit Court. No objection was made to that action.

On April 4, 1956, the Circuit Court, in the chancery proceedings, directed an issue out of chancery to determine whether or not the paper writing was, in fact, the valid will of Estelle Jones. On the issue out of chancery, there was evidence showing that the paper writing and the signature thereon were wholly in the handwriting of the testatrix. It also showed that Estelle Jones took William Jones when he was a young infant and raised him in her home as her child, but never legally adopted him; that Jones lived in the house of Estelle Jones the greater portion of his time and was living there at the time of her death; that Estelle Jones had been heard to say that she was going to leave her property to William Jones; and that testatrix had six brothers and sisters, and except James E. Spicely, all were dead, leaving a number of children. The jury found that the paper writing was the true last will and testament of Estelle Jones.

After the verdict of the jury, the chancellor, at the request of the parties, proceeded to construe the will. On October 4, 1956, he decreed, upon reasons set forth in a written opinion based partly on evidence before the jury, that the clauses contained in the will restricting the sale of land constituted "an unreasonable restraint on alienation of said property and are invalid and void." He then held that the will "devised to Inez Spicely's and Cragg's children an estate in fee in the ten acres on the other side of the road; to Thomas

Jones the sum of $5.00 and to William Jones an estate in fee in the rest and residue of her property."

No objection has been raised by either of the parties to any portion of the decree, save that with respect to the finding that William Jones was devised an estate in fee in the residuary estate. The sole assignment of error by the appellant is that the chancellor erred in not finding that Jones was devised a life estate only. We shall, therefore, deal only with that question.

■ In construing the will, we are guided by certain well established principles. The object is to determine what the testator meant by what he said in the will. If the intent be ascertainable from the language used, then that intent must be given effect. In determining the intention, the whole of the will should be considered and, if possible, effect given to all of its provisions, unless the thereby expressed intention violates some principle of law, or is against public policy. The "intention of the testator must be gathered from the language used by him and not from facts and circumstances which tend to show he intended to say something else." If the meaning of the words is plain there is no room for construction. *Davis* v. *Lynchburg Nat'l Bank*, 198 Va. 14, 92 S. E. 2d 278; *Conrad* v. *Conrad's Ex'or*, 123 Va. 711, 97 S. E. 336; *Chavis* v. *Myrick*, 190 Va. 875, 878, 58 S. E. 2d 881, 883; *Baptist Home* v. *Mizell, Adm'r*, 197 Va. 399, 89 S. E. 2d 332; *Pitman* v. *Rutledge*, 198 Va. 567, 571, 95 S. E. 2d 153; *Boyd* v. *Fanelli*, 199 Va. 357, 99 S. E. 2d 619; 20 M. J., Wills, Sec. 81, pages 252 *et seq.* and cases cited.

■ Guided by the above principles, giving effect to the uncontested finding of the chancellor that the clauses in the will restricting the sale of the land involved are invalid, and construing the clause "all the rest to William Jones as long as he live," in the light of the common and ordinary acceptation of the meaning of the words used and the effective language of the will, we have no trouble in reaching the conclusion that the testatrix gave to William Jones a life estate only in the residue of her property.

We think there is no legitimate dispute as to the meaning of the words "as long as he live." They clearly, definitely and specifically limited the estate devised to William Jones as one for life, and no greater. We cannot speculate upon what testatrix intended to do. Our inquiry is not what she meant to express; but what the words she used do express. Where words have a clear meaning, we are not allowed to consider extrinsic evidence to vary, alter, or contradict

that meaning. The words "as long as he live" are not ambiguous or doubtful. They expressly limit the devise to an estate for life.

Judge Harrison, in his admirable work on "Wills and Administration," Vol. 1, page 491, made the following statement:

"The fact that there is no remainder is a matter to be considered in determining whether the estate granted is an estate in fee or for life, but where there is an express limitation for life, and where the construction calls for an estate for life the fact that there is no remainder does not affect the character of the estate. * * * Where there is no remainder, there is a reversion in favor of the estate of the testator."

In *Bristow* v. *Bristow*, 138 Va. 67, 120 S. E. 859, the will under review contained the following language:

"Knowing the uncertainty of life and the certainty of death, and desiring to make some disposition of what property I have so that it will do my little ones most good, I make this my last will and testament. I give to my wife, Bettie L. Bristow, all of my real and personal estate, after paying what money I owe, to use as she pleases during her life and while she remains my widow, and ask the court to allow her to qualify as my administratrix without security."

In construing the above provision, after referring to *Johns* v. *Johns*, 86 Va. 333, 10 S. E. 2, the court held that Bettie L. Bristow took a life estate only and after her death, the property descended to the children of her husband as his heirs at law.

Appellant seeks to invoke the principle that there is a strong presumption that each testator intends to dispose of his entire estate, especially where he employs such language as "all the rest."

Here, it is manifest that the testatrix was deficient in the use of language and unlearned in the law. However, in her devise of a portion of her estate to William Jones, she used plain and unambiguous words. She specified that her devise to him was for the period of his life, and she further sought to impose a restriction upon the sale of the estate given him for an uncertain and indefinite period. She used no language expressing her intention to dispose of the residue of her estate in fee to Jones or to any other. The words "as long as he live," and the attempted restriction upon the enjoyment of the life estate show a contrary intention.

Appellee further argues that the language in the will, "William see after me as long as I live," strongly indicates that she wished to reward Jones because of their apparent mother-son relationship. It may as well be argued that she thought a life estate in the residue of

her property would be sufficient compensation and appreciation for his service.

If it be presumed that testatrix intended to dispose of her entire estate, she failed to use language evidencing her intention to give the residue of her property to any specific person. Her failure to make such disposal does not affect the character of the estate given to Jones for life. Hence, an undisposed remnant of the estate continued in the testatrix, and as to such remnant she died intestate.

For the foregoing reasons, the decree of the trial court is reversed, and final decree will be here entered establishing a life estate in William S. Jones in the residue of testatrix's property, with the reversion upon his death to the heirs of Estelle Jones.

*Reversed and final decree.*